IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

KENNETH WAYNE WALLER                                                                     PLAINTIFF

v.                                Civil No. 1:15-CV-01010

NURSE SHERI RICE; CAPTAIN                                     DEFENDANTS
MITCHAM; and SHERIFF MIKE
MCGOUGH

**MEMORANDUM OPINION**

Plaintiff proceeds in this matter *pro se* and *in forma pauperis* pursuant to 42 U.S.C. § 1983. Currently before the Court is Defendants' Motion for Summary Judgment. (ECF No. 28). Plaintiff has responded. (ECF No. 34). Defendants have filed a reply. (ECF No. 36).

**I. BACKGROUND**

Plaintiff filed his Complaint on February 13, 2015. (ECF No. 1). At the time Plaintiff filed his Complaint he was an inmate[1] of the Union County Detention Center ("UCDC"). Plaintiff is not currently incarcerated. Plaintiff alleges he received "poor medical care" for his chronic heart condition from Defendant Rice. (ECF No. 1, pp. 4-5). Plaintiff further alleges that on January 21, 2015, Defendants McGough and Mitcham ordered him to be moved to the nursing station for the remainder of his confinement. (ECF No. 1, p. 5). Plaintiff claims he was told that he would "be observed by staff and Nurse Rice every 15 mins." (*Id.*). Plaintiff states that when he was moved to the nursing station he was placed in a cell that was infested with ants, had no hot water, and he was "denied to take showers or personal hygiene." (*Id.*). He further alleges he was placed "in isolation away from the kiosk denied visitation from my family and access to continue to utilize

---

[1] Plaintiff was identified as a pretrial detainee in Defendants' summary judgment documents.

my First Amendment [right] to file grievances on the inhumane treatment as an inmate and being punish for asking for immediately cardiac attention to treat my severe chest pains." (*Id.*). He also claims Defendants McGough and Mitchell put him in isolation with Defendant Rice "to keep from dealing with grievances[2] and providing the information I requested under the Freedom of Information Act." (*Id.*).

Defendants filed their Motion for Summary Judgment on October 11, 2017. (ECF No. 28). That same day, the Court entered an Order directing Plaintiff to file a response to the Summary Judgment Motion by November 1, 2017. (ECF No. 31). The Court subsequently granted Plaintiff's request for an extension. (ECF No. 33). Plaintiff responded on November 29, 2017, filing his Brief Answers in Response (ECF No. 34) and Statement of Undisputed Facts (ECF No. 35). Defendants replied on December 6, 2017, noting Plaintiff alleged unconstitutional false imprisonment for the first time in his Brief Answers in Response.[3] (ECF No. 36).

Defendants argue Plaintiff's case should be dismissed for the following reasons: (1) Plaintiff stated no official capacity claims against Defendant McGough or Union County; (2) Plaintiff failed to provide any evidence of deliberate indifference to his medical needs by Defendant Rice; (3) Defendants McGough and Mitcham were not deliberately indifferent to Plaintiff's medical needs because they are non-medical officials who believed he was being adequately cared for by medical staff and there was no evidence of deliberate indifference[4]; (4) Plaintiff, a pretrial detainee, was placed in one of the nurses' station medical observation cells to monitor his cardiac condition, not as punishment; and (5) Plaintiff did not allege he was deprived

---

[2] Plaintiff attached several grievances to his Complaint. As these grievances all mention Plaintiff's concerns about his medical care, and the response was to place Plaintiff in a medical observation cell in the nursing station, the Court does not interpret this statement to constitute a First Amendment retaliation claim.

[3] As this claim has been untimely submitted, it will not be considered.

[4] Although Plaintiff's Complaint is not a model of clarity or detail, it appears that his only allegations against Defendants Mitcham and McGough are that they placed him in the medical observation cell in the nursing station. It is, therefore, not necessary to address this argument.

of any identifiable human need while in the observation cell for, at most, ten days. (ECF No. 29, pp. 7-11).

Plaintiff filed two documents in response to the Summary Judgment Motion—his Brief Answers in Response (ECF No. 34) and his Statement of Undisputed Facts (ECF No. 35). The Statement of Undisputed Facts does not comply with the Court's Order (ECF No. 31) directing Plaintiff to identify each numbered paragraph that contains facts which he disputes and, for each paragraph, explain why he disputes those facts. Instead, in his Statement of Undisputed Facts Plaintiff repeatedly referred to unidentified responses which were to be incorporated by reference. For example, Plaintiff's response to Defendants' Statement of Fact Paragraph One reads as follows:

> See, Plaintiff's response to Defendants' Paragraph #1, as stated therein are hereby incorporated by reference and repeated with full force and effect as if fully re-stated here. In the interest of judicial economy, those objections will not be repeated except to say that, for the same reasons stated in those objections.

(ECF No. 35, p. 1). The Court cannot identify what response Plaintiff is referring to in this statement. With the exception of Paragraphs Six and Eight, this response is repeated, with minor non-substantive variations, for all Defendants' Statement of Facts. Plaintiff, thus, only disputes facts in Paragraphs Six and Eight of Defendants' Statement of Facts. Accordingly, Defendants' other Statement of Facts are deemed admitted pursuant to Local Rule 56.1(c).

In Paragraph Six, Defendants state that "Plaintiff was booked into the Union County Detention Center on December 27, 2014. Plaintiff reported a heart condition during the booking procedure and listed several medications he takes." (ECF No. 30, ¶ 6). Plaintiff disputes this statement as follows: "Plaintiff family delivery and gave the deputy on duty all medication Plaintiff takes. The weekend nurse on went over meds with Plaintiff." (ECF No. 35 at ¶ 6 objection). Plaintiff, thus, disputes that the medications were merely listed; he instead asserts his family

delivered all of his medications to the facility on the day of his arrest and the weekend nurse reviewed them with him.

In Paragraph Eight, Defendants state "Plaintiff was brought to Nurse Rice on January 6, 2015, to address complaints about his medication he was not receiving." (ECF No. 30, ¶ 8). Plaintiff disputes that he was brought to Nurse Rice on this date and states he offers additional material facts. (ECF No. 35, ¶ 8). Plaintiff does not identify these alleged material facts. Plaintiff did, however, attach a copy of a kiosk grievance dated January 6, 2015, to his Complaint. The date of the grieved incident was January 6, 2015. In it, Plaintiff states he visited Nurse Rice that day and was unhappy with the medical care received. (ECF No. 1, p. 7). Plaintiff's dispute concerning this fact is therefore contradicted by his own submitted documentation. Accordingly, Paragraph Eight of Defendants' Statement of Undisputed Facts is deemed admitted.

## II. LEGAL STANDARD

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *Nat'l Bank of Commerce v. Dow Chemical Co*., 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *Nat'l Bank*, 165 F.3d at 607 (citing *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249 (1986)). "A case founded on speculation or suspicion is

insufficient to survive a motion for summary judgment." *Id*. (citing *Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### III.  DISCUSSION

**A.  Official Capacity Claims**

Under Section 1983, a defendant may be sued in either his individual capacity, or in his official capacity, or in both.  In *Gorman v. Bartch,* the Eighth Circuit Court of Appeals discussed the distinction between individual and official capacity suits.  As explained in *Gorman*:

> Claims against government actors in their individual capacities differ from those in their official capacities as to the type of conduct that is actionable and as to the type of defense that is available. *See Hafer v. Melo*, 502 U.S. 21 (1991).  Claims against individuals in their official capacities are equivalent to claims against the entity for which they work; they require proof that a policy or custom of the entity violated the plaintiff's rights, and the only type of immunity available is one belonging to the entity itself. *Id*., 502 U.S. at 24–27.  Personal capacity claims, on the other hand, are those which allege personal liability for individual actions by officials in the course of their duties; these claims do not require proof of any policy and qualified immunity may be raised as a defense. *Id*., 502 U.S. at 25–27.

*Gorman*, 152 F.3d 907, 914 (8th Cir. 1998).  "[R]igorous standards of culpability and causation must be applied to ensure that the [county] is not held liable solely for the actions of its employee" in cases where a plaintiff claims a county has caused an employee to violate the plaintiff's constitutional rights. *Board of Cnty Comm'rs, Okla. v. Brown*, 520 U.S. 397, 405 (1997).

In the present case, Plaintiff has not alleged that any custom or policy of Union County caused the alleged violation of his rights. Accordingly, his official capacity claims should be dismissed.

5

## B. Denial of Medical Care

In his Complaint, Plaintiff alleges that he received "poor medical care" while incarcerated at the UCDC.

The Eighth Amendment prohibition of cruel and unusual punishment prohibits deliberate indifference to prisoners' serious medical needs. *Luckert v. Dodge Cnty*, 684 F.3d 808, 817 (8th Cir. 2012). To prevail on his Eighth Amendment claim, Plaintiff must prove that Defendants acted with deliberate indifference to his serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). The deliberate indifference standard includes "both an objective and a subjective component: 'The [Plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs.'" *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000) (quoting *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997)). To show that he suffered from an objectively serious medical need Plaintiff must show that he "has been diagnosed by a physician as requiring treatment" or has an injury "that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Schaub v. VonWald*, 638 F.3d 905, 914 (8th Cir. 2011) (internal quotations and citations omitted). For the subjective prong of deliberate indifference, "the prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation." *Popoalii v. Corr. Med. Servs*, 512 F.3d 488, 499 (8th Cir. 2008) (internal citation omitted). "Deliberate indifference is akin to criminal recklessness, which demands more than negligent misconduct." *Id*.

It is well settled that a "prisoner's mere difference of opinion over matters of expert medical judgment or a course of medical treatment fail[s] to rise to the level of a constitutional violation." *Nelson v. Shuffman*, 603 F.3d 439, 449 (8th Cir. 2010) (internal quotation marks and citations omitted). An "inmate must clear a substantial evidentiary threshold to show the prison's medical

6

staff deliberately disregarded the inmate's needs by administering inadequate treatment." *Id.* Despite this, issues of fact exist when there is a question of whether or not medical staff exercised independent medical judgment and whether the decisions made by medical staff fell so far below the reasonable standard of care as to constitute deliberate indifference. *See Smith v. Jenkins*, 919 F.2d 90, 93 (8th Cir. 1990). The objective seriousness of any delay in treatment must be measured by reference to the effect of delay, which must be shown by verifying medical evidence in the record. *Laughlin v. Schriro*, 430 F.3d 927, 929 (8th Cir. 2005).

There is no dispute that Plaintiff's cardiac issues constituted an objectively serious medical condition. There is, however, no evidence in the record that Defendant Rice was deliberately indifferent to Plaintiff's medical needs during his incarceration between December 27, 2014, and January 30, 2015.[5] To the contrary, Plaintiff's own documentation shows he was seen by a physician on January 12, 2015, and January 19, 2015. (ECF No. 1, p. 6). Plaintiff saw a facility physician again on January 26, 2015, and his medication was adjusted. Plaintiff was seen by other medical staff on January 6, 2015, January 12, 2015, January 28, 2015, and January 29, 2015. (ECF No. 30, ¶¶ 8, 10). Furthermore, Plaintiff was moved to the medical observation unit on January 21, 2015, after stating he was experiencing problems with his pacemaker, an increase in angina, and shortness of breath. (ECF No. 1, p. 10; ECF No. 29-8). Other portions of the record indicate Plaintiff refused to see the facility physician on January 17, 2015, asking instead to see his own cardiac specialist. (ECF No. 30, ¶ 12). No reasonable jury could find that Defendants acted with deliberate indifference to Plaintiff's cardiac condition under these facts.

Plaintiff has also submitted copies of four grievances as support for his claim that he received "poor medical care" while an inmate of the UCDC. Those grievances concern claims that

---

[5] The charges against Plaintiff were dropped, and he was released from custody on January 30, 2015. (ECF No. 29-1).

he did not receive his prescribed medications and at times received the wrong medications. However, the allegations in all four grievances are either directly contradicted by the record or otherwise fail to give rise to any genuine issues of material fact as Plaintiff has not submitted any verifying medical evidence indicating that his cardiac condition, cardiac prognosis, or general health were negatively affected by any delays in obtaining medication refills or any other medication issues.

Based on the summary judgment evidence before the Court, it is clear that Plaintiff received continual care while incarcerated at the UCDC. Accordingly, there is no genuine issue of material fact concerning Plaintiff's allegation of "poor medical care" and Defendant Rice is entitled to judgment as a matter of law.

**C. Isolation Claim**

Plaintiff alleges Defendants McGough and Mitchell ordered him moved to isolation in the nursing station on January 21, 2015, for the remainder of his confinement. (ECF No. 1, p. 5).

The Eighth Circuit has stated that "[p]retrial detainees are presumed innocent and may not be punished." *Martinez v. Turner*, 977 F.2d 421, 423 (8th Cir. 1992) (citing *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). "However, not every disability imposed during pretrial detention amounts to 'punishment' in the constitutional sense." *Smith v. Copeland*, 87 F.3d 265, 268 (8th Cir. 1996). In determining whether a particular restriction constitutes a permissible restriction or amounts to impermissible punishment, the court first asks "whether the restriction is based upon an express intent to inflict punishment." *Valdez v. Rosenbaum*, 302 F.3d 1039, 1045 (9th Cir. 2002). If "there is no indication of such an express intent," the court next considers "whether punitive intent can be inferred from the nature of the restriction." *Id.*, 302 F.3d at 1045.

In this regard, the Supreme Court in *Bell v. Wolfish* held that "if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does

not, without more, amount to 'punishment.'" *Bell*, 441 U.S. at 539. "An action may be reasonably related to a legitimate governmental purpose if an alternative purpose to which the act may rationally be connected is assignable for it and the action does not appear excessive in relation to the alternative purpose assigned." *Robles v. Prince George's Cnty, Md.*, 302 F.3d 262, 269 (4th Cir. 2002) (internal citations and punctuation omitted).

> A reasonable relationship between the governmental interest and the challenged restriction does not require an "exact fit," nor does it require showing a "least restrictive alternative." Otherwise, every administrative judgment would be subject to the possibility that some court somewhere would conclude that it had a less restrictive way of solving the problem at hand. Moreover, it does not matter whether we agree with the defendants or whether the policy in fact advances the jail's legitimate interests. The only question that we must answer is whether the defendants' judgment was rational, that is, whether the defendants might reasonably have thought that the policy would advance its interests.

*Valdez*, 302 F.3d at 1046. Furthermore, there are clearly legitimate non-punitive reasons for placing individuals with serious health problems in a separate housing unit from other inmates. *See e.g., Brown-El v. Delo*, 969 F.2d 644, 647 (8th Cir. 1992) (detention center has a legitimate interest in segregating individual inmates from general population for non-punitive reasons, such as where there is a threat to the safety and security of the institution).

In the present case, Plaintiff has presented no evidence of punitive intent on the part of the Defendants. The record, including Plaintiff's submitted documentation, indicates the decision to move Plaintiff to the medical observation unit in the nursing station was clearly made to safeguard his health—a legitimate governmental purpose. In his booking report, Plaintiff stated he had undergone heart surgery a week prior to his arrest, had nitroglycerin on his person, had Stage Three angina, and took several heart medications. (ECF No. 29-2, p. 1; ECF No. 30, ¶ 6). Plaintiff then filed several medical grievances, including a grievance on January 19, 2015, which stated he needed a cardiac specialist because he was experiencing an increase in angina, chest pains, shortness of breath, and his pacemaker was "frequently kicking in." (ECF No. 1, p. 10). Plaintiff

9

was escorted to the nursing station on January 21, 2015. While there, he stated he had been scheduled to have open-heart surgery the day before. (ECF No. 29-8). Plaintiff was then moved to a medical observation cell in the nursing station. (ECF No. 1, p. 5; ECF No. 29-8; ECF No. 30, ¶ 13). The Court can infer no punitive intent from Plaintiff's placement in a medical observation cell under these circumstances. Accordingly, Defendants McGough and Mitchell are entitled to judgment as a matter of law in regard to this claim as no genuine issues of fact remain.

### D. Conditions of Confinement

Plaintiff's Eighth Amendment rights were not violated by the presence of ants, the lack of hot water, or an inability to "to take showers or personal hygiene" in the medical observation cell from January 21, 2015, through January 30, 2015.

"[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." *Cnty of Sacramento v. Lewis*, 523 U.S. 833 (1998) (citation omitted). The Eighth Amendment to the United States Constitution prohibits the imposition of cruel and unusual punishment. U.S. CONST. amend. VIII. Detention centers must provide pretrial detainees with "reasonably adequate sanitation, personal hygiene, and laundry privileges[.]" *Beaulieu v. Ludeman*, 690 F.3d 1017, 1045 (8th Cir. 2012) (quoting *Howard v. Adkison*, 887 F.2d 134, 137 (8th Cir. 1989)). The Eighth Amendment also prohibits punishments that deprive inmates of the minimal civilized measure of life's necessities. *Smith v. Copeland*, 87 F.3d 265, 268 (8th Cir. 1996); *see also Hall v. Dalton*, 34 F.3d 648, 650 (8th Cir. 1994). As is the case with all Eighth Amendment claims, a prisoner must suffer some actual injury in order to receive compensation. This injury must be greater than *de minimis*. *Irving v. Dormire*, 519 F.3d 441, 448 (8th Cir. 2008).

Here, the lack of hot water in the medical observation cell did not constitute an excessive risk to Plaintiff's health and safety. Access to a sufficient quality and quantity of water for drinking

and basic personal hygiene is, of course, a minimal life necessity, but nothing in the Constitution requires that the water must be available on demand. *See e.g., Scott v. Carpenter*, 24 F. App'x 645, 647 (8th Cir. 2001) (unpublished) (no disagreement that basic personal hygiene falls within the minimal civilized measure of life's necessities); *Spires v. Paul*, 581 F. App'x 786, 792-94 (11th Cir. 2014) (housing an inmate in a cell without potable water for several days and forcing him to drink from the toilet to survive stated an Eighth Amendment violation). Furthermore, "[n]othing in the Constitution requires that each prisoner be provided with clean, cold, warm, or any other form of running water in his cell[.]" *Jelinek v. Roth*, 33 F.3d 56, *2 (7th Cir. 1994) (unpublished) (plumbing in cell that produced only water contaminated with rust that was undrinkable and unsuitable for bathing does not implicate the Eighth Amendment); *see also, Smith v. Copeland*, 892 F. Supp. 1218, 1230 (E.D. Mo. Apr. 25, 1995) (turning off water in a cell except for brief periods to flush the toilet, and providing drinking water with each meal did "not deprive plaintiff of minimally necessary drinking water or hygienic requirements") *aff'd*, 87 F.3d 265 (8th Cir. 1996); *Narducci v. Fields*, 62 F.3d 1428 (10th Cir. 1995) (unpublished) ("a lack of light, a lack of running water, poor cell ventilation, and placement in an individual cage for outdoor exercise" did not rise to the level of a constitutional violation); *Downs v. Carter*, 2016 WL 1660491, *8 (N.D. Ill. Apr. 27, 2016) ("There is no constitutional right to water on demand.").

Likewise, even if Plaintiff was completely denied shower privileges for the entire ten days he was in the medical observation unit, such a denial does not rise to the level of a constitutional violation. The Eighth Circuit has held that the denial of shower privileges for a short period of time does not constitute an Eighth Amendment violation. *Abernathy v. Perry*, 869 F.2d 1146, 1149 (8th Cir. 2008). While the Eighth Circuit has not directly addressed a ten-day denial of shower privileges, other courts have upheld similar or longer denials of shower privileges as

constitutional. *See e.g, Johnson v. Norris*, No. 2:08CV00052 JTR, 2008 WL 2952015, at *2 (E.D. Ark. July 29, 2008) (eight-day denial of shower privileges while on suicide watch did not state an Eighth Amendment claim); *Jones v. Houston*, No. 4:06CV03314, 2007 WL 3275125, *8 (D. Neb. Nov. 2, 2007) (holding that the denial of showering privileges for thirteen days was not an Eighth Amendment violation); *McCoy v. Goord*, 255 F.Supp.2d 233, 260 (S.D.N.Y Mar. 25, 2003) (holding that "a two week suspension of shower privileges does not suffice as a denial of basic hygiene needs") (internal quotation omitted).

Finally, the mere presence of ants in a cell does not rise to the level of a Constitutional violation. *See e.g., Obama v. Burl*, 477 Fed. App'x. 409 (8th Cir. 2012) (unpublished) (allegations of spiders, beetles, and ants in cell, without specifics, did not rise to constitutional violation).

Furthermore, Plaintiff has neither alleged nor provided any evidence that he suffered any actual injury, *de minimis* or otherwise, as a result of the presence of ants, the lack of hot water, or an inability "to take showers or personal hygiene" for ten days. Accordingly, Defendants are entitled to summary judgment on this claim as no genuine issues of material fact remain.

### IV.  CONCLUSION

For the foregoing reasons. The Court finds that Defendants' Motion for Summary Judgment (ECF No. 28) should be and hereby is **GRANTED**. Accordingly, Plaintiff's claims are **DISMISSED WITH PREJUDICE**. A Judgment of even date shall issue.

**IT IS SO ORDERED**, this 27th day of February 2018.

/s/ Susan O. Hickey  
Susan O. Hickey  
United States District Judge